UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BOOKER LINDSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-cv-01512-SEP |
| | ) |
| JOHN DOE #1, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff Booker Lindsey's motions for leave to proceed *in forma pauperis*, Doc. 2, and for appointment of counsel, Doc. 3, as well as the Court's initial review of the Complaint, *see* 28 U.S.C. § 1915. Plaintiff filed a Complaint against five defendants in their individual capacities: John Doe #1, Unknown Francis, Unknown Since, Unknown Vandergriff, and John Doe #2. For the reasons set forth below, the claims against Warden Vandergriff and Doe #2 are dismissed, while the excessive force claims against Deputy Warden Francis, Major Since, and Doe #1 may proceed. Additionally, having reviewed the motions and the financial information submitted in support, the Court finds that Plaintiff lacks sufficient funds to pay the entire filing fee and assesses an initial partial filing fee of $8.17. *See* 28 U.S.C. § 1915(b)(1). Finally, the Court denies Plaintiff's motion to appoint counsel at this time.

### THE FILING FEE

Under 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his request to proceed *in forma pauperis*, Plaintiff submits a copy of his inmate account statement, showing an average monthly deposit of $40.83. Doc. 5. The Court therefore assesses an initial partial filing fee of $8.17, which is 20 percent thereof.

### LEGAL STANDARD ON INITIAL REVIEW

Under 28 U.S.C. § 1915(e)(2), the Court must dismiss a complaint if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must plead plausible facts that demonstrate more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires a court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016).

When reviewing a *pro se* complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "Liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). Still, *pro se* complaints must allege facts that, if true, state a claim for relief as a matter of law, *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004), and the ordinary procedural rules of civil litigation may not be interpreted so as to excuse mistakes by *pro se* plaintiffs, *see McNeil v. United States*, 508 U.S. 106, 113 (1993).

### THE COMPLAINT[1]

Plaintiff is a self-represented litigant who is currently incarcerated at the Potosi Correctional Center (PCC) in Mineral Point, Missouri. His Complaint brings actions under 42 U.S.C. § 1983 against Sergeant John Doe #1, Deputy Warden Francis, Major Since, Warden Vandergriff, and Nurse John Doe #2. Doc. 1 at 2-4. He sues all Defendants only in their individual

---

[1] The following facts are taken from the Complaint, Doc. 1, and accepted as true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

2

capacities. Plaintiff alleges that Defendants illegally searched him in violation of the Fourth Amendment and used excessive force against him in violation of the Eighth Amendment.

Plaintiff alleges that Doe #1 woke him up on August 13, 2021, and gave him an order "to submit to wrist restraints for a cell search." When he departed from his cell, however, he was taken to the medical unit at the PCC, rather than "being placed on the restraint bench, as is customary for a cell search." Deputy Warden Francis and Major Since were both waiting in the medical unit when Plaintiff arrived. Plaintiff asked Francis: "What's going on[?]" Francis told him to "shut up," and Plaintiff was placed into full restraints. Francis then escorted him to a waiting vehicle, which drove him to the Eastern Reception, Diagnostic and Correctional Center (ERDCC). During the drive, Plaintiff asserts that Francis called ERDCC Warden Vandergriff. According to Plaintiff, Francis asked Vandergriff if he could use ERDCC's body scanner.

Upon arrival at the ERDCC, Plaintiff "was taken to the area where inmates are searched before and after visiting and forced into the body scan machine," because Plaintiff had allegedly swallowed drugs. The results of the scan showed something "in [his] system at the time."

Following the body scan, Plaintiff was escorted back to the PCC medical unit, where Francis, Since, and Doe #1 were all present. Francis ordered Doe #1 to: "Get a bucket and one of those sporks, and make that [racial epithet] throw up what he got right now." Doe #1 complied and placed the bucket in front of Plaintiff, grabbed him by the neck, and shoved the spork down his throat, causing him to vomit. No drugs or other contraband were expelled. Nurse Doe #2 then came in and asked Doe #1: "Is this legal?" In response, Doe #1 called Plaintiff a racial epithet, referred to him as "a slave," and said, "anything's legal," which caused "all present" to begin laughing.

Plaintiff was afraid that he would be beaten if he put up any resistance, so he allowed Major Since to force the spork down his throat once again. The second time, Plaintiff heaved but did not vomit, and no drugs were expelled. Plaintiff was then placed into a dry cell[2] in full restraints for three days, and received neither food nor medical attention.

Due to the above incident, Plaintiff suffered a bruised and sore throat, lost five pounds, and could not swallow anything for approximately ten days. Plaintiff seeks $100,000 in compensatory

---

[2] A dry cell has no running water or lavatory facilities and is used by correctional officials to prevent the disposal of contraband thought to have been ingested by an inmate. *See United States v. Holloway*, 128 F.3d 1254, 1255 n.1 (8th Cir. 1997); and *O'Neal v. Buckner*, 2021 WL 681434, at *1 (W.D. Mo. 2021).

3

damages from each Defendant, and $100,000 in punitive damages from each Defendant.  He also wants Defendants prosecuted for "kidnapping and torture."

DISCUSSION

I. **Illegal Search Claims**

   A. **Warden Vandergriff**

Plaintiff alleges that Vandergriff violated his Fourth Amendment rights by allowing Deputy Warden Francis to use ERDCC's body scanner to search Plaintiff for contraband.  In the prison context, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continued surveillance of inmates and their cells required to ensure institutional security and internal order."  *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984).  Institutional security is "central to all other corrections goals."  *Pell v. Procunier*, 417 U.S. 817, 823 (1974).

Although an inmate has no Fourth Amendment protection with regard to his cell, *Hudson*, 468 U.S. at 527-28, he still has rights under the Fourth Amendment against unreasonable searches of his body, *Story v. Foote*, 782 F.3d 968, 971 (8th Cir. 2015).  Prison inmates have a far lower expectation of privacy than members of the general public.  *Levine v. Roebuck*, 550 F.3d 684, 687 (8th Cir. 2008).  For example, the constitutionality of visual body cavity searches in prison has been upheld for reasons of institutional security.  *See Goff v. Nix*, 803 F.2d 358, 366 (8th Cir. 1986).  Likewise, random urinalysis testing of inmates has also been held not to violate the Fourth Amendment, due to a prison's security interest in detecting unauthorized narcotics use. *See Spence v. Farrier*, 807 F.2d 753, 755 (8th Cir. 1986).  Thus, when "there is no substantial evidence that the manner of the search is an exaggerated response to the perceived security concerns . . . wide-ranging deference [is given] to prison officials on matters concerning institutional security." *Franklin v. Lockhart*, 883 F.2d 654, 657 (8th Cir. 1989).

Plaintiff's allegations related to the body scanner do not state a claim for violation of his Fourth Amendment rights.  Because he is an inmate, Plaintiff has a lowered expectation of privacy.  Moreover, prison officials have wide latitude to undertake searches for reasons of institutional security.  Nothing in the Complaint indicates that the search at issue was unreasonable or done for an improper purpose, such as part of a pattern of harassment or retaliation.  Plaintiff acknowledges that he was suspected of ingesting contraband, and that the body scanner was used to confirm whether contraband was in his body.  Because more intrusive searches, such as visual body cavity

4

searches, have been upheld, the less-intrusive search alleged by Plaintiff does not rise to a constitutional violation.

Plaintiff also alleges that his rights were violated because there was no court order to search him, he was not given *Miranda* warnings, and his attorney was not present. But Plaintiff is an inmate incarcerated in state prison. There is no support for Plaintiff's claim that prison officials must obtain a court order before searching inmates, or that inmates must be *Mirandized* and provided with an attorney before a search can be performed.

For the reasons stated, Plaintiff has not sufficiently alleged that the search to which he was subjected was unreasonable, and the claim against Warden Vandergriff must be dismissed.

### B. Deputy Warden Francis

Plaintiff alleges that Deputy Warden Francis violated his constitutional rights because he transported Plaintiff to ERDCC and placed him in a body scanner to search for contraband. As previously discussed, Plaintiff has not demonstrated that the body scan search was unreasonable under the Fourth Amendment. Therefore, Plaintiff's claim against Francis for an unconstitutional search must be dismissed.

### II.   Excessive Force Claims

Plaintiff alleges that Sergeant Doe #1, Deputy Warden Francis, and Major Since used excessive force against him in violation of the Eighth Amendment when they forced an object down his throat and caused him to vomit.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

In the context of so-called "forced regurgitation," the Eighth Circuit has held that it did not violate the Eighth Amendment when prison officials gave an inmate suspected of having ingested contraband the option of either "drinking water to induce vomiting or spending time in a dry cell."

5

*Clavier v. Goodson*, 232 Fed. Appx. 616, 616-17 (8th Cir. 2007). The inmate in *Clavier* "chose the vomiting option to avoid spending several days in a dry cell," which resulted in "a sore throat and bruised muscle." *Id*. at 616. Although the district court had dismissed the case on the basis of qualified immunity, *Clavier v. Goodson*, 2005 WL 3213914, at *4 (E.D. Mo. 2005), the Eighth Circuit held that the qualified immunity inquiry was unnecessary as there was no Eighth Amendment violation. *Clavier*, 232 Fed. Appx. at 617.

Plaintiff alleges that, with Major Since and Sergeant Doe #1 present, Deputy Warden Francis used a racial epithet and ordered Doe #1 to get a spork and a bucket and force Plaintiff to vomit. Doe #1 grabbed Plaintiff around the neck and forced the spork down his throat until he vomited. No contraband was discovered. Fearing that he would be beaten, Plaintiff did not resist when Major Since forced the spork down his throat once again, causing him to dry heave. Plaintiff was then put in a dry cell in full restraints and was not given any food for three days.

Unlike in *Clavier*, Plaintiff was not given an option between vomiting and spending time in a dry cell; nor was he given the opportunity to induce vomiting on his own, by drinking water. Instead, Francis ordered Doe #1 to insert a spork down Plaintiff's throat against his will. After that yielded no contraband, Since forced the spork down Plaintiff's throat a second time. The alleged use of racial epithets by Francis and Doe #1 suggests that the defendants intended to cause Plaintiff pain and discomfort. The spork caused injury to Plaintiff's throat and, along with ensuing deprivation of food, caused him to lose weight.

Based on the allegations in the Complaint, which must be taken as true, the Court finds that Plaintiff has stated a cognizable claim under the Eighth Amendment against Francis, Since, and Doe #1.[3]

### III. Failure to Intervene

Plaintiff alleges that Nurse Doe #2 violated his Eighth Amendment right because Doe #2 failed to intervene when Plaintiff was subjected to the above alleged unnecessary and wanton infliction of pain. Under the Eighth Amendment, prison officials have an obligation to restore

---

[3] Fictitious parties cannot usually be named as defendants in lawsuits. *See Phelps v. United States Fed. Gov't*, 15 F.3d 735, 739 (8th Cir. 1994). But dismissal is proper only "when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention." *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). An action may proceed against an unknown party as long as the complaint makes "allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F. 3d 35, 37 (8th Cir. 1995). Here, the identity of John Doe #1 should be ascertainable after reasonable discovery.

control in tumultuous situations. *Buckner v. Hollins*, 983 F.2d 119, 121 (8th Cir. 1993). Under 42 U.S.C. § 1983, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); *Buckner*, 983 F.2d at 121-22. "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994).

Plaintiff alleges that Doe #2 arrived in the room sometime after Doe #1 had forced him to vomit. Doe #2 then allegedly asked Doe #1,"Is this legal?" Plaintiff states that Doe #2 was a Corizon nurse, not a correctional officer. As such, he has not shown that Doe #2 had an obligation to intervene in a use-of-force incident involving correctional staff, or that Doe #2 even had any training to recognize the difference between proper and improper force. Aside from asking a single question, there are no alleged facts about what Doe #2 did or did not do to violate Plaintiff's constitutional rights. Therefore, Plaintiff's claim against Doe #2 must be dismissed.

**IV.**     **Motion to Appoint Counsel**

In civil cases, a *pro se* litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). A district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the *pro se* litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

7

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis*, Doc. [2], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial partial filing fee of $8.17 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it:  (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel, Doc. [3], is **DENIED** at this time.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Warden Vandergriff and John Doe #2 are **DISMISSED**.  *See* 28 U.S.C. § 1915(e)(2)(B).  A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that Plaintiff's unconstitutional search claim against Deputy Warden Francis is **DISMISSED**.  *See* 28 U.S.C. § 1915(e)(2)(B).  A separate order of dismissal will be entered herewith.

**IT IS FINALLY ORDERED** that the Clerk of Court shall issue process or cause process to issue on Defendants Deputy Warden Francis, Major Since, and John Doe #1 in their individual capacities as to Plaintiff's excessive force claims.  Defendants shall be served in accordance with the waiver agreement that the Court maintains with the Missouri Attorney General's Office for service on Missouri Department of Corrections employees.

Dated this 9th day of April, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE