**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| BOOKER LINDSEY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Case No. 4:21-cv-01512-SEP |
| | ) |
| DANIEL FRANCIS, et al., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for Summary Judgment, Doc. [91]. For the reasons set forth below, the motion is denied.

### FACTS AND BACKGROUND

Plaintiff Booker Lindsey, who is incarcerated, brings this lawsuit against Defendants Daniel Francis, Ryan Since, and Timothy Brown, all correctional officers. The relevant facts are as follows.[1]

On August 10, 2021, Plaintiff was transferred to Potosi Correctional Center. Doc. [106] ¶ 1. On the evening of August 12, Plaintiff consumed heroin and methamphetamines while in his cell. *Id.* ¶ 3. Then, on the morning of August 13, 2021, Plaintiff reports that he swallowed 15 fentanyl-filled balls wrapped in latex gloves, equivalent to 30 grams of fentanyl. *Id.* ¶ 4; Doc. [94-7] at 36:11-18. That day, Defendants Since and Francis learned that Plaintiff was suspected of swallowing contraband and transported Plaintiff to the Eastern Reception Diagnostic and Correctional Center (ERDCC) in Bonne Terre, MO, to verify by body scanner whether Plaintiff had ingested contraband. Doc. [106] ¶ 5; Doc. [7] at 3.

The body scan revealed several round objects within Plaintiff. Doc. [106] ¶ 6. On the drive back to Potosi Correctional Center, Plaintiff reports that he asked to go to the hospital to have the ingested drugs removed because he feared that the latex may break and that he would die by overdose. *Id.* ¶ 8. Instead, Defendants Since and Francis took Plaintiff back to Potosi

---

[1] The facts are drawn from the Defendants' Statement of Uncontroverted Material Facts, Doc. [98], Plaintiff's response, Doc. [106], and Defendants' reply, Doc. [112].

Correctional Center and began the process of putting Plaintiff in "dry cell."[2]  Doc. [106] ¶¶ 7-8. Defendant Since explained in his deposition that the typical prison procedure is to perform a medical exam prior to putting an inmate in dry cell and have the inmate sit on continuous camera view for the 72 hours he is in dry cell.  Doc. [94-4] at 20:15-23.  Upon returning from ERDCC, Plaintiff was taken to the medical unit, where Defendants Since and Francis met Defendant Brown and a male nurse while the dry cell was prepared.  Doc. [106] ¶ 7.

Plaintiff and Defendants spent five to 15 minutes in the medical unit at Potosi Correctional Center.  Doc. [106] ¶ 11.  The parties agree on that fact but little else.  According to Plaintiff, Defendant Francis asked him how he would expel the drugs and Plaintiff told him he would expel the drugs either by bowel movement or throwing up.  Doc. [106] ¶ 8; Doc. [94-7] at 45:8-14.  And then, Plaintiff claims, immediately after he told Defendants that he could vomit up the contraband, they tried to force him to vomit using a spork and a bucket.  Doc. [106] ¶ 10. Specifically, Plaintiff alleges that Defendants Brown and Since forcefully inserted a spork into his mouth two times at Defendant Francis's direction.  *Id.* ¶¶ 10-11; Doc. [106-1] at 50:18-54:22.

According to Plaintiff, throughout this encounter, he was in "full shackles," meaning he was "handcuffed, [with a] belly chain, and leg restraints," making it impossible for him to stick his own finger down his throat.  Doc. [94-7] at 29:9-15; Doc. [106] ¶ 10.  Plaintiff also alleges that, during his time in the medical unit, Defendants laughed at him, called him a slave, told him anything was legal, and used an offensive racial epithet against him.  Doc. [112] at 15 ¶ 3. Defendants deny that any Defendants called Plaintiff a slave or used any racial epithets against him, and they point out that Plaintiff's own testimony was that a nurse called him a slave and said anything was legal, not Defendants.  *Id.* at 15-16 ¶ 3.  Plaintiff admits that he did not tell Defendants to stop or attempt to stop them, but states that his compliance was motivated by fear of being injured or killed.  Doc. [106] ¶ 16.

Defendants, meanwhile, claim that Plaintiff pleaded with Defendants to avoid "dry cell," and offered to produce the contraband by vomiting.  Doc. [106] ¶ 8.  Plaintiff points out that in their depositions, Defendants Brown, Since, and Francis all provide varying accounts of what came next—Defendant Francis testified that Plaintiff stuck the spork in his own throat,

---

[2] A dry cell has no running water or lavatory facilities and is used by correctional officials to prevent the disposal of contraband thought to have been ingested by an inmate.  *See United States v. Holloway*, 128 F.3d 1254, 1255 n.1 (8th Cir. 1997); *O'Neal v. Buckner*, 2021 WL 681434, at *1 (W.D. Mo. 2021).

2

Defendant Brown claimed Plaintiff used his finger, and Defendant Since testified that he did not see Plaintiff induce himself to vomit at all.  Doc. [112] ¶ 12.  In their statement of uncontroverted material facts, Defendants state that they provided Plaintiff an opportunity to produce the contraband.   Doc. [106] ¶ 10.  Subsequently, Plaintiff "obtained a spork from the ground and made himself gag by sticking the spork or his fingers into his mouth" and "a spork was inserted into Plaintiff's mouth a total of two times."  Doc. [106] ¶¶ 11-12.  Defendants further assert that they "stopped Plaintiff, before he could cause himself harm."  *Id.* ¶ 13.  Because Plaintiff was unable to expel the ingested contraband, he was placed in the "dry cell" for 72 hours, until at least two clear stools were produced.  Doc. [106] ¶ 18.

Plaintiff states that after the incident, he suffered bruising, abrasions, and swelling to his throat, pain and difficulty swallowing, and episodes of spitting up blood.  *Id.* at 14 ¶ 2.  In his deposition, Plaintiff testified that he also experienced significant psychological distress following this incident:  "I couldn't—I was afraid to eat off a spoon for years. I didn't want to stick nothing down my throat. . .  Because I was terrified of—every time I saw a spork I—I get the extremities shaking and sweating and things of that nature."  Doc. [94-7] at 91:6-14.  Defendants provide declarations from two nurses asserting that they did not observe any physical injuries to Plaintiff's throat or mouth as a result of the incident.  Docs. [106] ¶ 22; [94-5] (declaration of Brittany Butcher); [94-6] (declaration of Travis Moore).  Plaintiff alleges that he "declared a medical emergency" after his release from dry cell and was told by a nurse that his throat was swollen, while Defendants allege that Plaintiff did not seek medical attention for trauma associated with this incident until two months later.  Doc. [106] ¶ 29.  Defendants point to videos of some of their attempts to check on Plaintiff and provide him an opportunity for a bowel movement while he was in the dry cell.  *See* Exs. J-1, J-2, J-3, N-1, N-2, N-3.[3]

Plaintiff alleges that he attempted to submit written complaints and grievances about this incident, but MDOC employees denied him the opportunity to do so.  Doc. [106] ¶¶ 35, 36, 38.  Specifically, Plaintiff claims he tried to file an Informal Resolution Request (IRR) and use the prison grievance process.  *Id.* ¶ 36; Doc. [94-7] at 97:15-19.  He claims that his IRR "was never put in the computer."  *Id.* at 97:22-24.  He said he knows this because he asked a grievance officer to look it up, and the officer claimed his complaint was never submitted.  *Id.* at 98:7-11.  With his Complaint, Plaintiff filed a grievance letter addressed to Mr. Rob Savage that begins "I

---

[3] These exhibits are on file with the Court.

am writing you on the behalf of an I.R.R. that I filed on 8-21-21 in violation of due process." Doc. [1-4]. His letter, dated November 2021, notes that his prior grievance was filed over 70 days ago with no response, in violation of the IRR policy. Doc. [1-4]. Plaintiff adds that he sent a letter and a copy of his August 21, 2021, IRR to Mrs. Jessica Feldmann, LCSW, Behavioral Health Coordinator in Jefferson City on August 20, 2021, and sent a written letter to Director Anne L. Precythe regarding this issue. Doc. [1-4]. Plaintiff filed a letter dated September 28, 2022, addressed to "grievance officer" that appears to have been returned to Plaintiff with a handwritten note stating, "This does not qualify as an emergency grievance. Please see your case manager to use the IRR procedure, I believe this is CCMII Lawson." Doc. [12-1]. In his letter, Plaintiff wrote that he was requesting an emergency grievance and "filed an I.R.R. back in August of 2021 but to no avail on the behalf of my due process was violated, excessive use of force and torture. I have the right to exhaust my administrative remedies dealing with the grievance process." Doc. [12-1]. Defendants claim they have no record of receiving an IRR regarding the August 13, 2021, incident and that Plaintiff did not file an IRR. Doc. [106] ¶ 36.

Plaintiff's remaining claims are brought under 42 U.S.C. § 1983 against Defendants Francis, Since, and Brown[4] in their individual capacities, alleging that they used excessive force against Plaintiff in violation of the Eighth Amendment. Doc. [7] at 2-3.[5] Plaintiff seeks $100,000 in compensatory damages from each Defendant, and $100,000 in punitive damages from each Defendant. Doc. [7] at 3-4.

## LEGAL STANDARD

A court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4] Plaintiff originally named John Doe #1 as the third defendant in his Complaint, *see* Doc. [7] at 6, but then substituted Defendant Timothy L. Brown. Doc. [29].

[5] Plaintiff's Fourth Amendment claims and claims against Nurse Doe #2 were dismissed on 28 U.S.C. § 1915 review. *See* Doc. [7] at 4-7.

4

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quotation marks omitted). The non-movant must then "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The evidence must be viewed "in the light most favorable to, and making all reasonable inferences for, the nonmoving party." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 404 (8th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "'If reasonable minds could differ as to the import of the evidence,' summary judgment is inappropriate." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996) (quoting *Anderson*, 477 U.S. at 250).

**DISCUSSION**

Genuine disputes of material fact preclude summary judgment on exhaustion and the alleged Eighth Amendment violation. And Defendants are not entitled to qualified immunity because a jury has to find whether a constitutional right was violated, and the right allegedly violated was clearly established.

## I.      **There is a genuine dispute of material fact as to exhaustion.**

The Prison Litigation Reform Act (PLRA) requires a plaintiff to exhaust his administrative remedies before filing suit. 42 U.S.C. § 1997e(a). But failure to exhaust a plaintiff's administrative remedies is an affirmative defense that a defendant bears the burden of establishing. *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015). To establish a failure to exhaust, a defendant must show both that (1) administrative remedies "were available to the plaintiff" and (2) that Plaintiff failed to exhaust the remedies. *Taylor v. Null*, 2021 WL 4168220,

5

at *2 (E.D. Mo. Sept. 14, 2021); *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002). The "boundaries of proper exhaustion" depend on the prison's specific administrative policies. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies:  An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016).  An administrative remedy is "not capable of use" and is thus unavailable:  (1) where "it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the "administrative scheme" is "so opaque" as to be practically "incapable of use"; and (3) where "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44.  A "remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a). *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *see also Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (inmate may have exhausted remedies when MDOC prison officials refused to respond to IRR); *Allen v. City of Saint Louis*, 2008 WL 695393, at *5 (E.D. Mo. Mar. 12, 2008) (administrative remedies were rendered "unavailable" where prison officials' acts misled plaintiff and/or impeded his access to the grievance procedure).

Here, Plaintiff alleges that he attempted to follow the grievance process but was thwarted by Missouri Department of Corrections (MDOC) employees.  Doc. [106] ¶ 35.  Plaintiff states that he attempted to file an IRR by handing it to a case manager, but MDOC employees, including Grievance Office Savage, refused to accept his grievance, denying Plaintiff the opportunity to file one.  Doc. [106] ¶¶ 35-38; Doc. [106-1] at 108:20-110:3; Doc. [1-4]. Specifically, Plaintiff testified in his deposition that Officer Savage returned Plaintiff's grievance letters to Plaintiff with written messages including "something li[k]e I shouldn't worry about this, I need to get some help with my addiction and my 11s."  Doc. [106-1] at 109:3-110:25. Plaintiff further testified that Officer Savage "denied [him] the opportunity to file a grievance." *Id.* at 109:20-21.  Defendants point to a letter filed by Plaintiff as "the only IRR on file concerning an unrelated incident."  Doc. [106] ¶ 38; Doc. [1-4].  But in their statement of material facts and reply in further support thereof, Defendants refer to no evidence, not even a witness's testimony, that the letter was "the only IRR on file," or that the incident it addressed was "unrelated" to the events of this case. *See* Docs. [106] ¶ 37; [112] at 13-14 ¶ 37.

Meanwhile, the letter itself, Doc. [1-4], addressed to Grievance Officer Mr. Rob Savage, refers to "an IRR that [Plaintiff] filed on 8-21-21"—roughly one week after the incident at issue here.  It alleges that correctional authorities failed to respond to his grievance in a timely manner and notes that he sent a written letter and copy of his August 12, 2021, IRR to Mrs. Jessica Feldmann, LCSW, Behavioral Health Coordinator in Jefferson City on August 20, 2021, and a written letter to Director Anne L. Precythe regarding this issue.  Doc. [1-4].  The contents of the letter thus lend no support to Defendants' account and instead support Plaintiff's claim that he felt the need to sound the alarm both inside and outside the prison that his August 2021-filed IRR was not properly processed.

Defendants argue that they "have met their burden showing that Plaintiff did not exhaust the first step, or any subsequent step, of the procedure and therefore did not comply with the strict requirements of the PLRA.  As such the burden shifts to Plaintiff to show that his remedies were unavailable to him."  Doc. [111] at 3.  In support of their contention that the burden shifts to Plaintiff, Defendants cite *Aery v. Collins*, 2022 WL 3141803, at *7 (D. Minn. Mar. 17, 2022), *report and recommendation adopted*, 2022 WL 2914718 (D. Minn. July 25, 2022).  In *Aery*, the parties agreed that Aery filed an initial complaint.  Subsequently, "Sgt. Collins acted in response to Aery's initial complaint by following-up with Aery and apologizing to Aery and Daniels in person."  *Id.* at *8.  Then Aery failed to appeal under the grievance procedures or otherwise show that an appeal would be futile.  Because Aery failed to appeal or plead facts indicating that, "had he appealed, any attempt to resolve the issue with [the prison's] central office would have been met with an inability or unwillingness to remedy the situation," Aery did not meet his burden to show that remedies were unavailable to him such to excuse him from the PLRA's exhaustion requirement.  *Id.*

Unlike in *Aery*, Plaintiff claims that he attempted to lodge an IRR but prison employees refused to accept it, Doc. [106] ¶ 35, making the process a dead end.  Further, unlike in *Aery*, Defendants here have no evidence that Plaintiff elected not to pursue any part of the grievance procedure; they just point to an absence of evidence and ask the Court to adopt their interpretation of that absence, rather than Plaintiff's.  Doc. [111] at 1 ("[T]here is nothing in the record to suggest that Plaintiff filed a timely IRR that would satisfy MDOC's grievance procedure.").  But the Court may not credit Defendant' version of events at this stage.  Plaintiff claims he was thwarted from filing a grievance, Doc. [106] ¶ 35, and at summary judgment, a

7

court must view the evidence in the light most favorable to the nonmoving party, *Bruhn Farms Joint Venture v. Fireman's Fund Ins. Co.*, 823 F.3d 1161, 1165 (8th Cir. 2016). The lack of a grievance complaint on file from Plaintiff could arise from either Plaintiff's failure to file an IRR or Defendants' failure to allow Plaintiff to file an IRR. Because the record discloses a genuine dispute as to whether Plaintiff exhausted, the Court may not decide that question at summary judgment.

II.   **Defendants no longer claim an absence of genuine dispute as to the alleged Eighth Amendment violation.**

Defendants' first argument for summary judgment is that they did not use force against Plaintiff. Doc. [93] at 2. But the conflicting testimony about the underlying events presents a quintessential jury question. *See Torgerson*, 643 F.3d at 1042 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). To their credit, after receiving Plaintiff's opposition to their motion, Defendants acknowledge that "Plaintiff's Eighth Amendment claim presents a factual dispute for the purposes of summary judgment." Doc. [111] at 1. The Court therefore considers Defendants' bid for summary judgment on the constitutional violation to be withdrawn.

III.   **At this stage, Defendants are not entitled to qualified immunity.**

Qualified immunity requires a two-step inquiry "to determine whether a lawsuit against a public official alleging a constitutional violation can proceed in the face of an assertion of qualified immunity." *Serna v. Goodno*, 567 F.3d 944, 951 (8th Cir. 2009). Courts "consider whether, taken in the light most favorable to the party asserting the injury, [1] the facts alleged show the officer's conduct violated a constitutional right" and [2], whether the right was clearly established such that a reasonable official would have known at the time that his actions were unlawful. *Id.* at 951-52 (citation modified); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). When a plaintiff satisfies both of these conditions, defendants are not entitled to qualified immunity. *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). When the actions of correctional officers remain disputed, summary judgment is generally not appropriate on a qualified immunity theory. *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) ("[B]ecause the corrections officers' actions . . . remain disputed, summary judgment is not appropriate on a qualified immunity theory."); *see also Gainor v. Rogers*, 973 F.2d 1379, 1385 (8th Cir. 1992); *Ellis v. Sifuentes*, 2025 WL 2715253 at *3 (E.D. Ark. Sept. 4, 2025).

8

Because Defendants concede that there is a genuine factual dispute as to whether they violated Plaintiff's Eighth Amendment rights, the Court need not further address the first prong of the qualified immunity inquiry.  Turning to the second prong, the Court finds that Plaintiff's right not to be treated in the manner alleged was clearly established.

In the context of forced regurgitation specifically, the Eighth Circuit has held that it did not violate the Eighth Amendment for prison officials to provide an inmate suspected of having ingested contraband the option of either drinking water to induce vomiting or spending time in a dry cell.  *Clavier v. Goodson*, 232 Fed. Appx. 616, 616-17 (8th Cir. 2007).  But, viewing the record in the light most favorable to Plaintiff, that is not what happened here.  Instead, Plaintiff alleges that, while he was restrained and compliant, Defendants Brown and Since forcibly inserted a spork down his throat while he was subjected to racial epithets.  Doc. [106] ¶¶ 3, 10-13, 16.  As long ago as 2002, the Eighth Circuit wrote:

> It is well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause.  It is also clearly established that force may be justified to make an inmate comply with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security.

*Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (citation modified).

Viewing the record in the light most favorable to Plaintiff, a reasonable jury could find that he was subjected to a "malicious and sadistic use of force . . . done with the intent to injure and causing actual injury."  *Id.*  And no one has alleged that he was noncompliant to the point of posing a threat to others.  Thus, Plaintiff has made a submissible case that he was deprived of a clearly established constitutional right.  *See also id.* at 875 (the "law [is] clearly established that correctional officers do not have a blank check to use force whenever a prisoner is being difficult"); *Fisherman v. Launderville*, 100 F.4th 978, 981 (8th Cir. 2024) ("The law has been settled for at least three decades that repeatedly striking a fully restrained inmate violates the Eighth Amendment.") (citing *Munz v. Michael*, 28 F.3d 795, 800 (8th Cir. 1994)); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding.").

Because Eighth Circuit caselaw regarding the use of force against restrained inmates would have put any reasonable officer on notice that the actions alleged would violate Plaintiff's

constitutional rights, and the Court cannot decide on summary judgment whether the alleged constitutional violation actually occurred, Defendants may not invoke qualified immunity at this stage.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, Doc. [91], is **DENIED**.

Dated this 25th day of July, 2026.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE